1  TUCKER ELLIS LLP
   MONEE TAKLA HANNA SBN 259468
2  monee.hanna@tuckerellis.com
   515 South Flower Street, 42nd Floor
3  Los Angeles, CA 90071-2223
   Telephone:  213.430.3400
4  Facsimile:  213.430.3409

5  DUSTIN B. RAWLIN, *pro hac vice application pending*
   dustin.rawlin@tuckerellis.com
6  950 Main Street, Suite 1100
   Cleveland, OH 44113-7213
7  Telephone:  216.592.5000
   Facsimile:  216.592.5009

8

9  Attorneys for Defendant
   MENTOR WORLDWIDE LLC

10

11              **UNITED STATES DISTRICT COURT**

                **CENTRAL DISTRICT OF CALIFORNIA**
12
                       **WESTERN DIVISION**
13

14  BRITTANY BILLETTS, an individual;  ) Case No. 5:19-cv-01026-JGB-KK
    VIVIAN AGUIAR, an individual; ANN  )
15  DELMONICO, an individual; CORNELIA  ) Hon. Jesus G. Bernal
    DITTO, an individual; LEAH JOHNSON,  )
16  an individual;                      ) **DEFENDANT MENTOR**
                                        ) **WORLDWIDE LLC'S NOTICE OF**
17                                      ) **MOTION AND MOTION TO DISMISS**
                                        ) **PLAINTIFFS' COMPLAINT**
              Plaintiffs,               ) **PURSUANT TO FRCP 12(b)(6);**
18                                      ) **MEMORANDUM OF POINTS AND**
         v.                             ) **AUTHORITIES**
19                                      )
    MENTOR WORLDWIDE, LLC; NUSIL,  ) [Filed concurrently with Request for
20  LLC; NUSIL TECHNOLOGY LLC; and  ) Judicial Notice and [Proposed] Order]
    DOES 1–100, inclusive,             )
21                                      )
              Defendants.               )
22                                      ) **Date:        August 12, 2019**
                                        ) **Time:        9:00 a.m.**
23                                      ) **Courtroom:  1**
                                        )
24  _____ )

25

26

27

28

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 12, 2019, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 6A of the above-referenced court, located at 3470 Twelfth Street, Riverside, California 92501, Defendant Mentor Worldwide LLC ("Mentor") will and hereby does move to dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

The medical device at issue in this action—Mentor's MemoryGel Silicone Breast Implant—is a Class III medical device that was evaluated and approved by the U.S. Food and Drug Administration ("FDA") pursuant to the premarket approval ("PMA") process. This Motion is based on the grounds that the claims asserted by Plaintiffs Brittany Billetts, Vivian Aguiar, Ann Delmonico, Cornelia Ditto, and Leah Johnson are expressly preempted by the Medical Device Amendments to the federal Food, Drug and Cosmetic Act because Plaintiffs seek to impose labeling and manufacturing requirements that are different from or in addition to those imposed by the FDA through the PMA process. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008). To the extent Plaintiffs seek to enforce federal regulations governing the device, their claims also are impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Dismissal with prejudice is therefore appropriate. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support thereof; the concurrently filed Request for Judicial Notice; the pleadings and documents on file in this case; and on such other written or oral arguments as may be presented at or before the hearing on this Motion.

///

///

///

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 6, 2019.

DATED:  June 12, 2019                         TUCKER ELLIS LLP


By: */s/ Monee Takla Hanna*
       Dustin B. Rawlin
       Monee Takla Hanna
       Attorneys for Defendant MENTOR
       WORLDWIDE LLC

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND ......................................................................................... 1

III.    ARGUMENT............................................................................................... 4

    A.      The Federal Regulatory Scheme And Applicable Preemption
        Principles. ......................................................................................... 5

        1.      Federal regulation of Class III medical devices. ................... 5

        2.      Express preemption under the MDA. .................................... 7

        3.      Implied preemption under the MDA. .................................... 8

        4.      The "narrow gap" through which state-law claims must
            fit to escape preemption. ...................................................... 9

        5.      Courts routinely hold that claims involving breast
            implants are preempted. ...................................................... 10

    B.      Plaintiffs' Claims Are Expressly And Impliedly Preempted. ......... 10

        1.      Plaintiffs' failure-to-warn claims (Counts 1 and 2) are
            preempted. ............................................................................ 10

            a.      Plaintiffs have no failure-to-report claim. ................. 12

                (i)      Plaintiff Aguiar and Ditto cannot assert a
                        failure-to-report claim.................................... 12

                (ii)     Plaintiffs Billetts, Delmonico, and
                        Johnson have not sufficiently pled a
                        viable failure to report claim. ........................ 14

            b.      Plaintiffs cannot assert a parallel claim based on the
                post-approval studies ............................................. 17

            c.      Plaintiffs cannot assert a parallel claim based on an
                alleged fraud on the FDA. .................................... 19

        2.      Plaintiffs' manufacturing defect claims (Count 1 and 3)
            are preempted........................................................................ 20

IV.     CONCLUSION........................................................................................... 23

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Aaron v. Medtronic*,
 209 F. Supp. 3d 994 (S.D. Ohio 2016) ..................................................... 14

*Arkansas Louisiana Gas Co. v. Hall*,
 453 U.S. 571 (1981) ............................................................................. 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................... 4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................ 4, 21

*Buckman Co. v. Plaintiffs' Legal Comm.*,
 531 U.S. 341 (2001) ................................................................................ 1

*Casey v. Ohio Med. Prods.*,
 877 F. Supp. 1380 (N.D. Cal. 1995) ..................................................... 17

*Cashen v. Johnson & Johnson*,
 2018 WL 6809093 (N.J. Super. Ct. Law Div. Dec. 24, 2018). ............... 10

*Cipollone v. Liggett Grp., Inc.*,
 505 U.S. 504 (1992) ................................................................................ 7

*Clark v. Medtronic, Inc.*,
 572 F. Supp. 2d 1090 (D. Minn. 2008) ................................................. 20

*Cline v. Advanced Neuromodulation Sys., Inc.*,
 17 F. Supp. 3d 1275 (N.D. Ga. 2014) ............................................. 15, 22

*Conklin v. Medtronic, Inc.*,
 431 P.3d 571, 2018 WL 6613311 (Ariz. Dec. 18, 2018) ........................ 14

*Connelly v. St. Jude Medical, Inc.*,
 2018 WL 732734 (N.D. Cal. Feb. 6, 2018) ........................................... 16

*Covert v. Stryker Corp.*,
 2009 WL 2424559 (M.D.N.C. Aug. 5, 2009) .......................................... 5

*Ebrahimi v. Mentor Worldwide LLC*,
 2017 WL 4128976 (C.D. Cal. Sept. 15, 2017). ........................ 9, 15, 17, 23

*Ebrahimi v. Mentor Worldwide LLC*,
 2018 WL 2448095 (C.D. Cal. May 25, 2018). ...................... 10, 18, 20, 21

T<small>UCKER</small> E<small>LLIS</small> LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*Ebrahimi v. Mentor Worldwide LLC*,
    2018 WL 6829122 (C.D. Cal. Dec. 27, 2018)..................................................... 10, 21

*Eidson v. Medtronic, Inc.*,
    981 F. Supp. 2d 868 (N.D. Cal. 2013). ........................................................... 9

*Erickson v. Boston Sci. Corp.*,
    846 F. Supp. 2d 1085 (C.D. Cal. 2011) ......................................................... 21

*Frere v. Medtronic Inc.*,
    2016 WL 1533524 (C.D. Cal. Apr. 6, 2016) ................................................... 23

*Funke v. Sorin Grp. USA, Inc.*,
    147 F. Supp. 3d 1017 (C.D. Cal. 2015) .................................................... 11, 15

*Grassi v. Moody's Investor's Servs.*,
    2011 WL 3439184 (E.D. Cal. Aug. 5, 2011) ................................................... 4

*Hawkins v. Medtronic, Inc.*,
    2014 WL 346622 (E.D. Cal. Jan. 20, 2014) ................................................... 15

*Houston v. Medtronic*,
    957 F. Supp. 2d 1166 (C.D. Cal. 2013). ............................................... 8, 11, 12

*Howe v. Diversified Builders, Inc.*,
    262 Cal. App. 2d 741 (1968) ......................................................................... 13

*Hughes v. Boston Sci. Corp.*,
    631 F.3d 762 (5th Cir. 2011) .......................................................................... 14

*Hughes v. Cook*,
    452 F. Supp. 2d 832 (W.D. Tenn. 2006) ...................................................... 20

*In re Breast Implant Cases*,
    942 F. Supp. 958 (S.D.N.Y 1996) .................................................................. 2

*In re Breast Implant Litig.*,
    11 F. Supp. 2d 1217 (D. Colo. 1998) ............................................................. 2

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ........................................................................ 5

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
    592 F. Supp. 2d 1147 (D. Minn. 2009)..................................................... 8, 23

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
    623 F.3d 1200 (8th Cir. 2010). .............................................................. 9, 12, 13

*Janssen Pharmaceutica, Inc. v. Bailey*,
    878 So.2d 31 (Miss. 2004)............................................................................. 10

TABLE OF AUTHORITIES

*Kasel v. Remington Arms Co.*,
   24 Cal. App. 3d 711 (1972) ................................................................. 13

*Kashani-Matts v. Medtronic, Inc.*,
   2013 WL 6147032 (C.D. Cal. Nov. 22, 2013) ..................................... 12

*Laux v. Mentor Worldwide, LLC*,
   2017 WL 5186329 (C.D. Cal. Nov. 8, 2017) ................................. 10, 22

*Malonzo v. Mentor Worldwide, LLC*,
   2014 WL 2212235 (N.D. Cal. May 28, 2014) ..................................... 10

*Marmol v. St. Jude Med. Ctr.*,
   132 F. Supp. 3d 1359 (M.D. Fla. 2015) .............................................. 13

*Maryland v. Louisiana*,
   451 U.S. 725 (1981) ............................................................................. 7

*McGuan v. Endovascular Techs., Inc.*,
   182 Cal. App. 4th 974 (2010) ............................................................. 20

*McMullen v. Medtronic, Inc.*,
   421 F.3d 482 (7th Cir. 2005). ....................................................... 8, 12

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ......................................................................... 5, 6

*Mink v. Smith & Nephew, Inc.*,
   860 F.3d 1319 (11th Cir. 2017) .......................................................... 13

*Mize v. Mentor Worldwide LLC*,
   2018 WL 5085716 (Cal. Sup. Ct. Oct. 2, 2018) ............................ 10, 18

*Morgan v. Medtronic, Inc.*,
   172 F. Supp. 3d 959 (S.D. Tex. 2016) ............................................... 11

*Norman v. Bayer Corp.*,
   2016 WL 4007547 (D. Conn. July 26, 2016) ..................................... 17

*Norton v. Independence Technology* ,
   2011 WL 3584491 (E.D. Cal. Aug. 15, 2011) ...................................... 5

*Offshore Rental Co., Inc. v. Continental Oil Co.*,
   22 Cal. 3d 157 (1978) ......................................................................... 12

*Paturzo v. Boston Sci. Corp.*,
   2017 WL 8220600 (C.D. Cal. Apr. 21, 2017) .................................... 15

*Pearsall v. Medtronics, Inc.*,
   147 F. Supp. 3d 188 (E.D.N.Y. 2015) ............................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013). .................................................................. 9

*Perfetti v. McGahn Medical*,
    662 P.2d 646 (N.M. App. 1983) ................................................................ 11

*Pinsonneault v. St. Jude Med., Inc.*,
    953 F. Supp. 2d 1006 (D. Minn. 2013)...................................................... 16

*Pozefsky v. Baxter Healthcare Corp.*,
    2001 WL 967608 (N.D.N.Y. Aug. 16, 2001) .............................................. 2

*Rankin v. Boston Sci. Corp.*,
    2010 WL 672135 (E.D. Ky. Feb. 19, 2010) ............................................... 20

*Rice v. Allergan USA, Inc.*,
    2018 WL 1618036 (N.D. Ala. Apr. 4, 2018)............................................... 18

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008)......................................................................... 1, 3, 6, 8

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009)......................................................... 9

*Rowe v. Mentor Worldwide, LLC*,
    2018 WL 1320251 (M.D. Fla. Mar. 2, 2018) .............................. 10, 13, 18

*Savage v. Danek Medical, Inc.*,
    31 F. Supp. 2d 980 (M.D. Fla. 1999).......................................................... 10

*Scanlon v. Medtronic Sofamor Danek USA Inc.*,
    61 F. Supp. 3d 403 (D. Del. 2014)............................................................. 9

*Shaw v. Hahn*,
    56 F.3d 1281 (9th Cir. 1995) ...................................................................... 5

*Shwarz v. United States*,
    234 F.3d 428 (9th Cir. 2000) ...................................................................... 5

*Simmons v. Boston Sci. Corp.*,
    2013 WL 12130261 (C.D. Cal. Jan. 14, 2013) ......................................... 22

*State Dep't of State Hosps. v. Superior Ct.*,
    61 Cal. 4th 339 (2015) .............................................................................. 18

*Stengel v. Medtronic, Inc.*,
    704 F.3d 1224 (9th Cir. 2013) ............................................................ 11, 17

*Valentine v. Baxter Healthcare Corp.*,
    68 Cal. App. 4th 1467 (1999) .................................................................... 10

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*Walker v. Medtronic, Inc.*,
  670 F.3d 569 (4th Cir. 2012) ......................................................... 20

*Warstler v. Medtronic, Inc.*,
  238 F. Supp. 3d 978 (N.D. Ohio 2017) ...................................... 14, 16, 22

*Weaver v. Ethicon, Inc.*,
  2016 WL 7098781 (S.D. Cal. Dec. 06, 2016) .............................. 15, 21

*Wolicki-Gables v. Arrow Int'l, Inc.*,
  634 F.3d 1296 (11th Cir. 2011). ..................................................... 8

*Yosowitz v. Covidien*,
  182 F. Supp. 3d 683 (S.D. Tex. 2016) ............................................ 23

## STATUTES

21 C.F.R. § 801.109 ...................................................................... 3

21 C.F.R. § 803.9(a) .................................................................... 16

21 C.F.R. § 814.39 ...................................................................... 11

21 C.F.R. § 814.82 ....................................................................... 4

21 C.F.R. § 820.30 ...................................................................... 22

21 C.F.R. § 878.3530 .................................................................... 3

21 U.S.C. § 301 ........................................................................... 5

21 U.S.C. § 337(a) ........................................................................ 8

21 U.S.C. § 360c(a)(1) .................................................................. 6

21 U.S.C. § 360c(a)(1)(C)(ii) ........................................................ 6

21 U.S.C. § 360e(d)(2) .................................................................. 6

21 U.S.C. § 360e(d)(6)(A)(i) .......................................................... 6

21 U.S.C. § 360j(e)(1) ................................................................... 6

21 U.S.C. § 360k(a) ...................................................................... 7

## OTHER AUTHORITIES

5 Witkin, Summary of Cal. Law § 193 (10th ed. 2005) .......................... 13

72 Fed. Reg. 15,885 ...................................................................... 3

72 Fed. Reg. 15,886 ...................................................................... 3

Restatement (Second) of Conflict of Laws § 146 ................................... 13

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This is a product liability action concerning Mentor's MemoryGel Silicone Breast Implant ("MemoryGel Implant"), a Class III medical device approved by the U.S. Food and Drug Administration ("FDA") through the premarket approval process. Plaintiff Brittany Billetts ("Plaintiff Billetts"), Plaintiff Vivian Aguiar ("Plaintiff Aguiar"), Plaintiff Ann Delmonico ("Plaintiff Delmonico"), Plaintiff Cornelia Ditto ("Plaintiff Ditto") and Plaintiff Leah Johnson ("Plaintiff Johnson") assert three claims against Mentor based on the labeling and manufacture of the MemoryGel Implants. The Court should dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

*First*, Plaintiffs' claims are subject to dismissal under *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008).  In *Riegel*, the United States Supreme Court held that the Medical Device Amendments, 21 U.S.C. §§ 360 *et seq*., to the federal Food, Drug and Cosmetic Act expressly preempt state-law tort claims involving FDA-approved Class III medical devices that seek to impose labeling or manufacturing requirements that are different from, or in addition to, those imposed by the FDA. Here, Plaintiffs seek to impose labeling and manufacturing requirements that are different from, or in addition to, those approved by the FDA through the PMA process.  Accordingly, Plaintiffs' claims are expressly preempted.

*Second*, to the extent Plaintiffs seek to enforce federal regulations governing the MemoryGel Implants, their claims also are impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

## II.   BACKGROUND

### A. The Early Breast Implant Litigation.

Breast implant litigation dates back to the 1990s.  Plaintiffs filed thousands of cases alleging local injuries, including pain from capsular contracture, rupture, leakage, infection, and temporary or permanent disfigurement, as well as systemic illnesses,

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

including autoimmune and connective tissue disorders. *See, e.g.*, *In re Breast Implant Cases*, 942 F. Supp. 958, 959 (S.D.N.Y. 1996). The Honorable Jack Weinstein—one of the judges who presided over those cases—characterized the litigation as "[a] legal and economic mini-disaster caused by lack of robust application of science in the courts." Jack B. Weinstein, *Preliminary Reflections on Administration of Complex Litigations*, 2009 CARDOZO L. REV. DE NOVO 1, 4 (2009). According to Judge Weinstein, "[t]he breast implant litigation was largely based on a litigation fraud" perpetrated by "medical charlatans." *Id.* at 14. Had they maintained control over scientific evidence, courts overseeing the litigation could have avoided a judicial "fiasco" that led to "[h]uge unwarranted recoveries with resulting bankruptcies." *Id.* at 15.

During the breast implant litigation, a consensus developed in the scientific community that there was no connection between breast implants and an increased likelihood of any disease. *See Pozefsky v. Baxter Healthcare Corp.*, 2001 WL 967608, at *3–5 (N.D.N.Y. Aug. 16, 2001). Indeed, there were literally dozens of epidemiological studies concluding that silicone breast implants did not cause disease. *See id.* at *4 (referring to "nearly thirty published epidemiological studies that conclude that breast implants do not cause any typical or atypical diseases"); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1227 (D. Colo. 1998) (explaining that "[e]very controlled epidemiological study concludes that silicone breast implants do not double the risk of any known disease").

## B. **Plaintiffs' Claims**

This case is one of a handful of cases pending in state and federal courts across the country.

Plaintiffs were surgically implanted with MemoryGel Implants between 2007 and 2016. *See* Compl. ¶¶ 21–39. Plaintiff Brittany Billetts resides in California. *See id.* ¶ 1. Plaintiffs Vivian Aguiar and Cornelia Ditto reside in Florida. *See id.* ¶ 2, 4. Plaintiff Ann Delmonico resides in Rhode Island. *See id.* ¶ 3. And Plaintiff Leah Johnson resides in Mississippi. *See id.* ¶ 5.

Plaintiffs allege that following their respective surgeries, they experienced various injuries, including fatigue, joint pain, swelling of the breasts, and muscle weakness. *See id.* ¶¶ 22–39. Plaintiffs then underwent explant surgery to remove one or both of their implants. *Id.* Plaintiffs filed their Complaint on February 22, 2019.[1] In it, they assert claims for negligence and negligence per se premised on failure-to-warn and manufacturing-defect theories (Count 1), strict liability failure to warn (Count 2), and strict liability manufacturing defect (Count 3).

### C. The MemoryGel Implant.

The MemoryGel Implant is a Class III medical device. *See* Compl. ¶ 42. The FDA approved the device through the PMA process on November 17, 2006, finding it to be safe and effective as designed, manufactured, and labeled. *See id.* ¶ 67; *see also* Def.'s Request for Judicial Not. ("RJN"), Ex. 1 (PMA Approval Order and Summary of Safety and Effectiveness for P030053 (Nov. 17, 2006)); *id.*, Ex. 2 (72 Fed. Reg. 15,885, 15,886 (April 3, 2017) Notices, TABLE 1: List of Safety and Effectiveness Summaries for Approved PMAs Made Available from October 1, 2006 to December 31, 2006). Thereafter, the implants could be sold only to healthcare professionals and only in accordance with the design, manufacturing, and labeling specifications approved by the FDA. *See Riegel*, 552 U.S. at 316; *see also* 21 C.F.R. § 801.109.

As part of its premarket approval of the MemoryGel Implant, the FDA identified "six post-approval studies" that Mentor agreed to conduct as a condition of approval, including the core study, the large post-approval study, the device-failure study, the focus-group study, the informed-decision study, and the adjunct study. Compl. ¶¶ 67–68; Def.'s RJN, Ex. 1. The FDA has "[c]losely monitor[ed] the status and conduct" of

---

[1] Plaintiffs filed the Complaint in San Bernardino Superior Court. Mentor initially removed the action to the Central District of California on March 20, 2019, but agreed to remand on March 25, 2019 upon receipt of newly acquired information pertaining to service of process. Following the deposition of one of Defendant NuSil LLC's members which conclusively demonstrated that NuSil LLC was an improper party, Mentor timely removed the action to this Court on June 5, 2019.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

these studies "so that data is collected, validated scientifically and disseminated widely." Def.'s RJN, Ex. 3 (FDA Update on the Safety of Silicone Gel-Filled Breast Implants, Executive Summary) at 33. The FDA also has recognized that "[e]ach study had some patients who were not available for follow-up because they had died or discontinued participation." *Id.* at 9. Contrary to Plaintiffs' allegation that Mentor has failed to conduct the required post-approval studies (*see* Compl. ¶ 171), Mentor has completed or is completing these studies—and the FDA *never* has found otherwise. Further, although the FDA is empowered to withdraw premarket approval due to a manufacturer's failure to comply with post-approval requirements, *see* 21 C.F.R. § 814.82, the agency's approval of the MemoryGel Implant remains in effect.

## III.  **ARGUMENT.**

Dismissal is warranted under Rule 12(b)(6) when a plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level" or fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007). This "plausibility" standard applies to all claims brought in federal court, including those based on state law that have been removed from state court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009); *Grassi v. Moody's Investor's Servs.*, 2011 WL 3439184, at *4–5 (E.D. Cal. Aug. 5, 2011). A claim is plausible only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

Further, while a court generally must accept well-pleaded facts as true, this principle does *not* apply to legal conclusions, conclusory allegations, or unwarranted factual inferences. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citing FED. R. CIV. P. 8(a))); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (explaining that court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable interferences").

In addition, a court need not accept as true allegations that are contradicted by judicially noticeable facts. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). A "court may look beyond the plaintiff's complaint to matters of public record"—including public documents available on the FDA's website—without converting a Rule 12(b)(6) motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *see also Covert v. Stryker Corp.*, 2009 WL 2424559, at *1 n.2 (M.D.N.C. Aug. 5, 2009) ("[T]he Court may take judicial notice of and consider the public records of the FDA . . . without transforming this motion [] into a motion for summary judgment." (citations omitted)); *Norton v. Independence Tech., LLC*, 2011 WL 3584491, at *1 n.1 (E.D. Cal. Aug. 15, 2011) (taking judicial notice of FDA documents as matters of public record without converting motion into one for summary judgment).

## A.     The Federal Regulatory Scheme And Applicable Preemption Principles.

Below is an overview of the federal regulatory scheme and the applicable preemption principles that govern the MemoryGel Implants and Plaintiffs' claims.

### 1.     Federal regulation of Class III medical devices.

In 1976, Congress enacted the Medical Device Amendments ("MDA") to the federal Food, Drug, and Cosmetic Act ("FDCA"). *See* 21 U.S.C. §§ 301 *et seq*. The MDA gives the FDA exclusive regulatory authority over medical devices. In establishing a regulatory regime for the oversight of medical devices, the MDA was expected "to provide for the safety and effectiveness of medical devices intended for human use." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 474 (1996) (quotations omitted,

citing the preamble to the MDA, 90 Stat. 539).

The MDA establishes three classes of medical devices—Class I, Class II, and Class III—based on the level of oversight required to ensure their safety.  *See* 21 U.S.C. § 360c(a)(1).  Class III devices receive the most federal oversight and require premarket approval by the FDA.  *See Riegel*, 552 U.S. at 317.  Generally, a device is assigned to Class III if a less stringent classification cannot "provide reasonable assurance of safety and effectiveness, and the device is 'purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health,' or 'presents a potential unreasonable risk of illness or injury.'"  *Id.* (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)).

Through the PMA process, a manufacturer provides the FDA with a "reasonable assurance" that a Class III device is both safe and effective.  *See* 21 U.S.C. § 360e(d)(2).  The PMA process is "rigorous" and requires a manufacturer to submit an application containing specific information and data about the safety and efficacy of a Class III device that the FDA then scrutinizes. *See Riegel*, 552 U.S. at 317–18.  This scrutiny includes examination of the design specifications, manufacturing processes, and labeling proposed by the manufacturer.  *See id.*  In determining whether to approve a Class III device, the FDA must weigh the probable benefits of the device against its risks.  *See* 21 U.S.C. § 360c(a)(2)(C).  Ultimately, the FDA must approve the product's labeling and may impose device-specific restrictions.  *See id.* § 360j(e)(1).[2]

Once the FDA grants premarket approval, "the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)).  Moreover, approved

---

[2] The PMA process is so rigorous that in 2005, the FDA approved only *32* Class III devices; during the same time-period, the FDA cleared for market over 3,000 medical devices through other, less rigorous regulatory pathways.  *See Riegel*, 552 U.S. at 317; *see also Lohr*, 518 U.S. at 477 (explaining that the FDA spends an "average of 1,200 hours" on each premarket approval application).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

devices are subject to ongoing reporting requirements related to device safety.  *See id.*  For example, a manufacturer must inform the FDA of studies and investigations of its devices as well as incidents where the device caused or could have caused serious injury. *See id.*   The FDA retains authority to withdraw approval based on this information.  *See id.*

### 2.      Express preemption under the MDA.

To ensure that FDA oversight of PMA-approved medical devices is not controverted by state law, Congress included the following express preemption provision in the MDA:  "[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement— (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a).

In *Riegel*, the Supreme Court created a two-step process for analyzing the MDA's express preemption provision.  First, a court must decide whether the FDA has established "requirements" specific to the device at issue.  *See* 552 U.S. at 321–22. Second, a court must determine whether the state-law claim would impose any requirement that "relates to the safety or effectiveness of the device" and is "different from, or in addition to" the federal requirement.  *See id.* at 323 (quoting 21 U.S.C. § 360k(a)).  If the state-law claim imposes such requirements, the claim is expressly preempted.  *See id.*; *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (explaining that because federal law "'shall be the supreme Law of the Land,'" any "state law that conflicts with federal law is 'without effect'" (quoting U.S. Const., Art. VI, cl. 2; *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981))).

The Supreme Court in *Riegel* recognized that because PMA approval imposes device-specific requirements and state-law tort claims impose requirements "different from, or in addition to" the FDA's requirements, most state-law claims involving PMA

devices are preempted.  552 U.S. at 322–25.  Following *Riegel*, "courts across the country have applied Section 360k(a) broadly, preempting all manner of claims from strict products liability and negligence, to breach of warranty, to failure to warn and manufacturing-and-design-defect, to negligence *per se*."  *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1152 (D. Minn. 2009) (collecting authority) (internal citations omitted).

Section 360k(a), however, "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations" because the state duties in such a case 'parallel,' rather than add to, federal requirements."  *Riegel*, 552 U.S. at 330.  It is well accepted that in order for a state requirement to be parallel to a federal requirement, and thus not expressly preempted under section 360k(a), the plaintiff must show that the requirements are "genuinely equivalent."  *E.g.*, *Houston v. Medtronic*, 957 F. Supp. 2d 1166, 1174 (C.D. Cal. 2013) (quoting *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300 (11th Cir. 2011)).  State and federal requirements are not generally equivalent if a manufacturer could be held liable under state law without having violated federal law.  *See, e.g.*, *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005).

### 3.    Implied preemption under the MDA.

The MDA also contains an implied preemption provision.  Specifically, the MDA provides that all actions to enforce FDA requirements concerning medical devices "shall be by and in the name of the United States."  21 U.S.C. § 337(a).  In *Buckman*, the Supreme Court emphasized that section 337(a) "leaves no doubt" that federal law bars suits by private litigants "for noncompliance with the medical device provisions." 531 U.S. at 349 n.4.  Thus, even if a plaintiff's claim is not expressly preempted, it is impliedly preempted if it is cognizable only by virtue of the provisions of the FDCA. *See id.* at 348, 353 (holding that "fraud-on-the-FDA" claims were impliedly preempted because they "exist solely by virtue of the FDCA disclosure requirements").

State-law claims based on conduct that violates the FDCA can escape implied

preemption if and only if "the alleged wrongdoing 'would give rise to liability under state law even if the FDCA had never been enacted.'" *Ebrahimi v. Mentor Worldwide LLC*, 2017 WL 4128976, at \*4 (C.D. Cal. Sept. 15, 2017) ("*Ebrahimi I*") (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)); *see also Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 881 (N.D. Cal. 2013) ("a state law cause of action escapes implied preemption if it would state a claim under state law even in the absence of the FDCA" (citations omitted)).  Claims not tied to state-tort duties are essentially private actions to enforce the FDCA and are barred by section 337(a).  *See Ebrahimi I*, 2017 WL 4128976, at \*5–6 (in case involving MemoryGel Implants, holding that plaintiff's failure-to-warn claim was impliedly preempted because she identified no state-law duty to conduct "follow-through studies," and holding further that her manufacturing-defect claim was impliedly preempted because "it hinges entirely on conduct she claims violates the FDCA").

### 4.    The "narrow gap" through which state-law claims must fit to escape preemption.

Together, express and implied preemption create a "narrow gap" through which a state-law claim "must fit" to escape preemption.  *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013).  The plaintiff "'must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).'" *Id.* (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010) ("*In re Medtronic Leads*").  Stated another way, a plaintiff cannot survive preemption unless her claims are "premised on conduct that both (1) violates the FDCA and (2) would give rise to a recovery under state law even in the absence of the FDCA."  *Scanlon v. Medtronic Sofamor Danek USA Inc.*, 61 F. Supp. 3d 403, 411 (D. Del. 2014).

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

### 5.   Courts routinely hold that claims involving breast implants are preempted.

Applying the preemption principles above, courts across the country routinely hold that failure-to-warn and manufacturing-defect claims involving breast implants—including the MemoryGel Implants at issue here—are subject to dismissal. *See, e.g.*, *Ebrahimi v. Mentor Worldwide LLC*, 2018 WL 6829122, at *2 (C.D. Cal. Dec. 27, 2018) ("*Ebrahimi III*"); *Ebrahimi v. Mentor Worldwide LLC*, 2018 WL 2448095, at *2–3 (C.D. Cal. May 25, 2018) ("*Ebrahimi II*"); *Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1295–96, 1300 (M.D. Fla. 2018); *Ebrahimi I*,  2017 WL 4128976, at *4–7; *Cashen v. Johnson & Johnson*, 2018 WL 6809093, at * 10 (N.J. Super. Ct. Law Div. Dec. 24, 2018); *Shelp v. Allergan, Inc.*, 2018 WL 6694287 (W.D. Wash. Dec. 20, 2018); *Mize v. Mentor Worldwide LLC*, 2018 WL 5085716, at *2 (Cal. Sup. Ct. Oct. 2, 2018) ("*Mize II*"); *Mize v. Mentor Worldwide LLC,* 2018 WL 1364257, at * 2 (Cal. Sup. Ct. Mar. 13, 2018) ("*Mize I*"); *Laux v. Mentor Worldwide, LLC*, 2017 WL 5186329, at *3–4 (C.D. Cal. Nov. 8, 2017); *Malonzo v. Mentor Worldwide, LLC*, 2014 WL 2212235, at *3 (N.D. Cal. May 28, 2014).

### B.   Plaintiffs' Claims Are Expressly And Impliedly Preempted.

Plaintiffs' claims do not fit through the "narrow gap" between express and implied preemption.

### 1.   Plaintiffs' failure-to-warn claims (Counts 1 and 2) are preempted.

As an initial matter, Plaintiffs *cannot* assert a claim based on the theory that Mentor had a duty to warn them directly. *See, e.g.*, Compl. ¶¶ 131, 164.  Any such claim fails as a matter of state law because, under the learned intermediary doctrine, a manufacturer's duty to warn runs only to the prescribing physician, *not* the patient.  *See e.g.*, *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1483 (1999).[3]  Any

---

[3] *See also Savage v. Danek Medical, Inc.*, 31 F. Supp. 2d 980, 984–85 (M.D. Fla. 1999); *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So.2d 31, 57 (Miss. 2004); *Greaves v. Eli Lilly and Co.*, 503 Fed. Appx. 70, 71 (2d Cir. Nov. 20, 2012) (affirming summary

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

such claim also is expressly preempted because Plaintiffs have not identified a federal law requiring manufacturers to warn patients directly.  *See generally* Compl.; *see also Funke v. Sorin Grp. USA, Inc.*, 147 F. Supp. 3d 1017, 1024 (C.D. Cal. 2015) (holding that claim was expressly preempted "[a]bsent such a showing").

Nor can Plaintiffs assert a claim based on the theory that Mentor had a duty to provide warnings to their physicians that were different from those approved by the FDA.  *See* Compl. ¶¶ 133, 166, (alleging that Mentor failed to provide proper warnings that would "enhance the safe use of the device," and that it "failed to adequately warn of the risks that the product was vulnerable to degradation, deterioration, ruptures, and leakage").  Any such claim is expressly preempted because it necessarily would impose a requirement that is different from, or in addition to, the FDA-imposed requirement. *See, e.g.*, *Houston*, 957 F. Supp. 2d at 1177  ("Plaintiff aims to foist upon Defendants labeling or warning requirements 'in addition to' what federal law requires. Therefore, the claim is expressly preempted.").[4]

Similarly, Plaintiffs cannot assert a claim based on the theory that Mentor had a duty to revise its labeling through the Changes Being Effected ("CBE") procedure.  *See, e.g.*, Compl. ¶¶ 132, 188 (alleging that Mentor had a duty to "unilaterally update the product labeling").  That procedure is permissive, *not* mandatory.  *See* 21 C.F.R. § 814.39.   That being so, a state-law claim premised on a failure to use the CBE procedure necessarily imposes a requirement in addition to the federal requirement and is thus expressly preempted.  *See, e.g.*, *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1234 (9th Cir. 2013) (Watson J., concurring) (explaining that because section 814.39 "did not

judgment for manufacturer on failure to warn claim where district court (Weinstein, J.) predicted Rhode Island Supreme Court would adopt the learned intermediary doctrine).
[4] *See also Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 968 (S.D. Tex. 2016) (failure-to-warn claim was expressly preempted because it sought to impose labeling requirements that differed from federal requirements); *Blankenship v. Medtronic, Inc.*, 6 F. Supp. 3d 979, 989 (E.D. Mo. March 25, 2014) (finding plaintiff's failure to warn claim preempted because it would "establish labeling and warning requirements different from, or in addition to, federal requirements for the Infuse Device.").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

require" post-sale warnings, "any attempt to predicate [plaintiffs'] claim on an alleged state law duty to warn doctors directly would have been expressly preempted"); *McMullen* 421 F.3d at 489 (explaining that because section 814.39 permits, but does not require, a manufacturer to revise its labeling, a state-law claim requiring a defendant to do so imposes a requirement that "is in addition to the federal requirement" and is thus expressly preempted); *In re Medtronic Leads*, 623 F.3d at 1205 (quoting *McMullen* approvingly and explaining that "[e]ven if federal law *allowed* Medtronic to provide additional warnings, as Plaintiffs alleged, any state law *imposing* an additional requirement is preempted by § 360k"); *Houston*, 957 F. Supp. 2d at 1178 (holding that failure-to-warn claim was expressly preempted and confirming that "FDA regulations permit Defendants to issue such post-sale warnings, those regulations do not require such warnings"); *Kashani-Matts v. Medtronic, Inc.*, 2013 WL 6147032, at *4 (C.D. Cal. Nov. 22, 2013) (same).

### a.    Plaintiffs have no failure-to-report claim.

Plaintiffs purport to base their claims for negligence (Count 1) and strict liability failure to warn (Count 2) on an alleged failure to report adverse events to the FDA. *See* Compl. ¶¶ 121, 129, 171. This so-called "failure-to-report" claim fails either because it is not cognizable under the laws of Plaintiffs' respective home states, or because it is insufficiently pleaded.

### (i)    Plaintiff Aguiar and Ditto cannot assert a failure-to-report claim.

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010). California courts employ a flexible "governmental interest" test to resolve choice-of-law issues. *Offshore Rental Co., Inc. v. Continental Oil Co.*, 22 Cal. 3d 157, 161 (1978). In personal injury actions, the law of the state where the injury occurred generally "determines the rights and liabilities of the parties, 'unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." 5

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

Witkin, Summary of Cal. Law § 193 (10th ed. 2005) (citing Restatement (Second) of Conflict of Laws § 146).  Thus, "California courts have tended to apply the law of the place of the injured's domicile, finding that state has the greatest interest in compensating its domiciliaries." *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 734 (1972).

Here, Plaintiffs Aguiar and Ditto allege that they resided in Florida at all relevant times. *See* Compl. ¶ 2, 4.  Florida law therefore governs their claims. *See, e.g.*, *Howe v. Diversified Builders, Inc.*, 262 Cal. App. 2d 741, 745–46 (1968) (applying Nevada law to personal injury action brought by Nevada resident).

Plaintiffs' claims premised on an alleged failure to report are not cognizable because Florida does not recognize a state-law claim for failure to report adverse events to the FDA. An alleged failure to report adverse events to the FDA thus cannot form the basis of a parallel claim because there is no parallel duty under Florida law. Such claims are subject to dismissal on implied preemption grounds because they "are simply an attempt by private parties to enforce the MDA, claims foreclosed by § 337(a) as construed in *Buckman*." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1205–06 (8th Cir. 2010). Applying this reasoning, the court in another MemoryGel Implant case applying Florida law rejected the plaintiff's failure-to-report claim, explaining that it "is 'very much like the 'fraud-on-the-FDA claim the Supreme Court held was impliedly preempted in *Buckman*' because [the plaintiff] is alleging Mentor 'failed to tell the FDA those things required by federal law.'" *Rowe*, 297 F. Supp. 3d at 1296 (quoting *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017)); *see also Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1369 (M.D. Fla. 2015) ("Because Plaintiff's failure-to-warn claim is premised upon an FDA-reporting requirement that is not paralleled by a Florida-law duty, Plaintiff's claim is impliedly preempted.").

As another court recently explained when it rejected a similar claim, "the <u>federal duty *to report certain information to the FDA*</u> is not 'identical' . . . , and thus not

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

parallel, to the state-law duty *to provide warnings to patients or their physicians*." *Aaron v. Medtronic*, 209 F. Supp. 3d 994, 1005 (S.D. Ohio 2016) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996)) (emphasis in original).  The *Aaron* court's observation makes good sense.  After all, "[d]octors are warned of the risks associated with a medical device through the device's labeling, not through adverse-event reports submitted to the FDA."  *Id.*; *see also Warstler v. Medtronic, Inc.*, 238 F. Supp. 3d 978, 989 (N.D. Ohio 2017) ("[A] manufacturer's mandatory adverse event report to the FDA does not function as a warning.").

Because Florida law does not recognize a failure-to-report claim, the Court should dismiss the failure-to-report claims in Counts 1 and 2 as to Plaintiffs Aguiar and Ditto.

### (ii) Plaintiffs Billetts, Delmonico, and Johnson have not sufficiently pled a viable failure to report claim.

In the states that recognize or may recognize failure-to-report claims,[5] Plaintiffs must plead facts showing that (1) Mentor failed to report actual adverse events, (2) the FDA would have included such events in its publically-accessible adverse-event database had Mentor reported them, and (3) Plaintiffs' physicians would have accessed that information and relied on it to change their treatment decisions, thereby preventing Plaintiffs' injuries.  *See, e.g.*, *De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1097 (N.D. Cal. 2016) (dismissing failure-to-report claim where plaintiff failed to allege that her physician would have become aware of adverse events had defendant reported them); *see also Hughes v. Boston Sci. Corp.*, 631 F.3d 762, 770 n.5, 776 (5th Cir. 2011) (explaining that plaintiff must show that adverse-event reports

---

[5] Courts in California, Mississippi, and Rhode Island have recognized or implied that they may recognize a failure-to-report claim.  *See, e.g.*, *Coleman*, 223 Cal. App. 4th at 420.  The continuing viability of *Coleman* is questionable, however.  The court's analysis hinged largely on *Stengel*, in which the Ninth Circuit recognized such a claim under Arizona law.  *See id.* at 425, 428–29.  But the Arizona Supreme Court recently rejected *Stengel* and confirmed that a failure-to-report claim is impliedly preempted because there is no state-law duty to report adverse events to the FDA.  *Conklin v. Medtronic, Inc.*, 431 P.3d 571, 578–79 (Ariz. Dec. 18, 2018).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

would have reached her prescribing physician in time to prevent her injuries); *Cline v. Advanced Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1286 & nn.10–11 (N.D. Ga. 2014) (explaining that plaintiffs "ultimately must allege that if Defendant had properly filed [adverse-event reports] in accordance with FDA regulations, this information would have reached Plaintiff or her physician in time to prevent her injury"). Plaintiffs have not satisfied these pleading hurdles.

First, Plaintiffs merely assert that Mentor "failed to report adverse events" from its post-approval studies without identifying any actual unreported adverse events. Compl. ¶ 129. That boilerplate allegation and others like it are entirely conclusory and thus insufficient. *See, e.g.*, *Weaver v. Ethicon, Inc.*, 2016 WL 7098781, at *6 (S.D. Cal. Dec. 06, 2016) ("A general allegation that Defendant failed to report adverse events to the FDA is not sufficient to demonstrate causation." (citing *Hawkins v. Medtronic, Inc.*, 2014 WL 346622, at *8 (E.D. Cal. Jan. 20, 2014))); *Funke*, 147 F. Supp. 3d at 1025 (rejecting conclusory assertion that defendant "failed to report adverse events").

Instead, Plaintiffs must identify *actual* adverse events that Mentor failed to report. *See, e.g.*, *Ebrahimi I*, 2017 WL 4128976, at *5 (rejecting claim in another MemoryGel Implant case that was pled "in conclusory fashion"); *Paturzo v. Boston Sci. Corp.*, 2017 WL 8220600, at *5–6 (C.D. Cal. Apr. 21, 2017) (same, where plaintiffs did not allege "any actual adverse event that Defendants failed to report"); *Weaver*, 2016 WL 7098781, at *6 (same, where plaintiff failed to allege "specific instances of actual adverse events" that defendant failed to report); *Grant*, 2016 WL 4447523, at *7 (same). Like the plaintiffs in these cases, Plaintiffs here do not identify any actual adverse event that Mentor failed to report—either before or after their implant procedures. The Court should dismiss their claims for this reason alone.

Second, Plaintiffs do not plead facts showing that the FDA would have included any additional adverse events in its database had Mentor reported them. *See generally* Compl. Although they suggest that the FDA updates its database with "'all reports received prior to the update'" (*id.* ¶¶ 124, 192), they cite no regulatory support for that

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

conclusory allegation.  In fact, there is *no* requirement that the FDA include every adverse-event report in its database, and the decision to include any report is left to the FDA's discretion.  *See Connelly v. St. Jude Medical, Inc.*, 2018 WL 732734, at *1 & n.1 (N.D. Cal. Feb. 6, 2018) (noting that FDA "'may disclose' adverse-event reports" in its database but "is not required to do so" (quoting 21 C.F.R. § 803.9(a))); *Aaron*, 209 F. Supp. 3d at 1007 (same); *Pinsonneault v. St. Jude Med., Inc.*, 953 F. Supp. 2d 1006, 1016 (D. Minn. 2013) (explaining that adverse-event reports "are not automatically made public" and the decision to make them public "is within the FDA's discretion").[6] Because adverse-event reports are not automatically made public, "they are not warnings," and the federal duty to submit them is therefore "not 'equal to, or substantially identical' to a state law duty to warn" physicians.  *Warstler v. Medtronic, Inc.*, 238 F. Supp. 3d 978, 989 (N.D. Ohio 2017) (quoting *Lohr*, 518 U.S. at 496–97).

Third, Plaintiffs do not allege that their physicians even relied on information in the FDA database when making their treating decisions.  *See generally* Compl.  Instead, they allege merely that physicians generally "may use" the database to obtain safety information.  *See id.* ¶¶ 124, 192.  But that generic allegation does not show that *Plaintiffs'* physicians would have relied on any such information to change *their* treatment decisions.  *See, e.g.*, *Ebrahimi I*, 2017 WL 4128976, at *5 (dismissing failure-to-report claim where plaintiff "fail[ed] to allege how any reporting by Mentor to the

---

[6] The Court cannot simply *assume* that the FDA would have included additional adverse-event reports in its database.  *See, e.g.*, *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 575, 580–81 (1981) (holding that state court violated Supremacy Clause to U.S. Constitution and "usurped a function that Congress has assigned to a federal regulatory body" when it assumed that Federal Power Commission would have approved rate increase had one been filed).  Any such assumption would be particularly inappropriate here given that the FDA has long known about the potential for rupture and gel bleeding—the alleged risks at issue.  *See, e.g.*, Compl. ¶ 23, 26, 30, 34, 38. Indeed, the applicable labeling warned about both risks.  *See* Product Insert Data Sheet at 9, 20 (warning that "[r]upture of a silicone gel-filled breast implant is most often silent" and that small quantities of silicone compounds and platinum "have been found to diffuse ('bleed') through an intact implant shell") (RJN, Ex. 4.)

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

FDA would have caused her surgeon to stop using the Implants"); *De La Paz*, 159 F. Supp. 3d at 1097 (same, where plaintiff "pled no facts that plausibly indicate that she or her physician would have become aware of these adverse events if Bayer had timely reported them").

Based on these collective pleading failures, the Court cannot reasonably infer that any additional disclosures to the FDA would have reached Plaintiffs' treating physicians or changed their treatment decisions. *See, e.g.*, *Norman v. Bayer Corp.*, 2016 WL 4007547, at *4 (D. Conn. July 26, 2016) ("[B]ecause of the FDA's independence and bureaucratic process, defendants hardly would have had any 'reasonable assurance' that the reported information would have reached plaintiff." (quoting *Stengel*, 704 F.3d at 1233)).[7]

### b. Plaintiffs cannot assert a parallel claim based on the post-approval studies

Plaintiffs' allegations show that their claims are based *not* on a failure to report actual adverse events from the post-approval studies that in fact occurred but rather on a purported failure to properly conduct those studies in the first instance. *See, e.g.*, Compl. ¶ 69 ("Mentor failed to ensure that these mandated studies were performed properly, in part by not ensuring that the participants were followed after implantation. Accordingly, the information which the FDA was seeking regarding adverse events and device failures was *never gathered*." (emphasis added)); ¶ 76 (alleging that "[t]he lack of a sufficient statistical sample" due to low follow-up rate "*significantly limited the information available*" (emphasis added)); ¶¶ 82, 91 (alleging that "follow up" rates for the large post-approval study were too low "*to allow for identification of adverse effects*" and that the device-failure study "failed to contain an adequate sample size *to provide meaningful data*" (emphasis added)). Thus, Plaintiffs' theory is that if the

[7] Again, the Court cannot simply *assume* that Plaintiffs' physicians would have relied on information in the FDA database. After all, adverse-event reports do not and cannot prove causation. *See, e.g.*, *Casey v. Ohio Med. Prods.*, 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) ("[C]ase reports are not reliable scientific evidence of causation . . . .").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

sample-size and follow-up rates in Mentor's studies had been adequate—*i.e.*, if Mentor had conducted the studies *differently*—the company would have identified additional adverse events and would have been required to report those events to the FDA.

But Plaintiffs cannot pursue a claim premised on the counterfactual *assumption* that Mentor would have identified additional adverse events if it had conducted its studies differently.  Any such claim is inherently speculative.  *See, e.g.*, *State Dep't of State Hosps. v. Superior Ct.*, 61 Cal. 4th 339, 356–57 (2015) (affirming dismissal of claims premised on theory that inmate would have been civilly committed had mandatory psychological evaluation been performed differently, reasoning that claims were "speculative and conjectural" because they depended on a series of hypothesized determinations).  Not surprisingly, courts in two MemoryGel Implant cases have rejected identical claims.  *See Ebrahimi II*, 2018 WL 2448095, at *3 (reasoning that "the alleged technical defects in Mentor's post-approval studies . . . do not constitute adverse events" and that plaintiff "merely speculates that had Mentor conducted these studies properly, the FDA 'would have discovered 'reports suggesting the device's contribution to death or serious injury'"); *Mize II*, 2018 WL 5085716, at *2 (reasoning that plaintiff's claim was "premised on Mentor's failure to report adverse incidents that were not detected").

Moreover, Plaintiffs cannot pursue a claim based on the post-approval studies because there is no state-law duty to conduct such studies in the first instance—a fact that courts in other MemoryGel Implant cases have confirmed.  *See Ebrahimi I*, 2017 WL 4128976, at *5 (confirming that there is "no parallel state-law duty to conduct post-approval 'follow-through studies'" under California law); *Rowe*, 297 F. Supp. 3d at 1296 (similar, and confirming that such a claim is "the quintessential" one that the Supreme Court found impliedly preempted in *Buckman*); *accord Rice v. Allergan USA, Inc.*, 2018 WL 1618036, at *2, *7–8 (N.D. Ala. Apr. 4, 2018) (in case involving federal requirement to conduct post-approval study, finding negligence and strict liability

claims impliedly preempted because plaintiff did not identify "a traditional state law cause of action for post-market surveillance that predated the MDA").

### c. Plaintiffs cannot assert a parallel claim based on an alleged fraud on the FDA.

In addition, Plaintiffs cannot base their failure-to-warn claims on the allegation that "a Mentor chemist of 15 years reported to the FDA that Mentor's implants are more likely to break than the company reported" and also "more likely to leak," and that the company "knew of these risks . . . but covered them up." Compl. ¶ 65. The FDA was on notice of the former employee's allegations *before* the agency approved the MemoryGel Implant and its accompanying labeling on November 17, 2006. Indeed, on October 12, 2006, Public Citizen sent a letter to the FDA concerning the allegations in paragraph 60 in which it called for a criminal investigation. *See* Exhibit 5 to RJN. In that letter, Public Citizen referenced a June 22, 2006 letter to the FDA by "a former senior scientist from Mentor" who had been employed by the company for 15 years. *See id.* A copy of the June 22 letter is attached to Mentor's RJN as Exhibit 6. These letters show that the allegations at issue had nothing to do with adverse-event reporting but instead related to various testing data. In response to the Public Citizen letter, the FDA issued a statement clearing Mentor of any wrongdoing. *See* Exhibit 7 to RJN (newspaper article in which FDA spokeswoman is quoted as stating, "The agency conducted a thorough investigation into these charges and found no evidence of wrongdoing and nothing that would raise questions about the safety of the product under review or the integrity of data submitted to FDA.").

Based on this material, which the Court may judicially notice, Plaintiffs are seeking to assert a claim that would require the jury to second-guess the FDA's decision to approve Mentor's labeling notwithstanding the agency's knowledge of the former employee's allegations. That is precisely the sort of preempted fraud-on-the FDA claim that the Supreme Court in *Buckman* held would interfere with "the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." 531

U.S. at 349–51; *see also McGuan v. Endovascular Techs., Inc.*, 182 Cal. App. 4th 974, 984–85 (2010) (affirming dismissal of product liability claims as preempted where FDA reapproved defendant's medical device notwithstanding agency's knowledge of defendant's alleged fraudulent conduct); *Ebrahimi II*, 2018 WL 2448095, at *3 n.6 (rejecting same allegations, reasoning that "these dangers were reported to the FDA," and explaining further that "these allegations fail to provide Mentor with fair notice as to which adverse events . . . it should have reported to the FDA").

### 2. Plaintiffs' manufacturing defect claims (Count 1 and 3) are preempted.

Plaintiffs cannot premise their manufacturing defect claims on the alleged fact that their implants ruptured. *See, e.g.*, Compl. ¶¶ 23, 26, 30, 34, 38. Implant rupture is a known risk about which Mentor warned. *See* Def.'s RJN, Ex. 4. Moreover, the fact that any implant ruptured does not show that Mentor violated a federal requirement governing the implant's manufacture. Indeed, courts have reached a "consensus" that "tort claims based on the failure of devices that were designed, manufactured, and sold in accordance with the terms of their premarket approval" are preempted. *Walker v. Medtronic, Inc.*, 670 F.3d 569, 580–81 (4th Cir. 2012).[8]

Plaintiffs' claims fare no better to the extent premised on Mentor's alleged violations of federal law. Plaintiffs simply conclude that Mentor's implants differed in some unidentified way from "the specifications agreed to by the FDA" (Compl. ¶ 142); that Mentor used unidentified "materials and components" that somehow differed from "those approved by the FDA" (*id.*); and that Mentor violated unspecified provisions of

[8] *See also Hughes v. Cook*, 452 F. Supp. 2d 832, 842 (W.D. Tenn. 2006) (rejecting argument that device should "always function," reasoning that FDA did not approve device's "success rate" and plaintiff therefore was seeking to impose "state specific requirements" that were different from those imposed by federal law); *Rankin v. Boston Sci. Corp.*, 2010 WL 672135, at *4 (E.D. Ky. Feb. 19, 2010) (finding preemption even though balloon catheter "allegedly failed during normal use"); *Clark v. Medtronic, Inc.*, 572 F. Supp. 2d 1090, 1094 (D. Minn. 2008) (rejecting argument that "premarket approval guarantees the device is completely safe," and finding preemption despite device failure).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

"applicable federal regulations," including "the FDA's Quality System Regulations and design control requirements under 21 C.F.R. 820.30" (*id.* ¶¶ 142, 145, 216, 220).  But Plaintiffs allege no facts identifying *what* federal requirements Mentor supposedly violated.

Conclusory allegations, however, are insufficient to state a claim. *See Twombly*, 550 U.S. at 555  Courts routinely dismiss claims where, as here, the plaintiff fails to plead any facts concerning a defendant's purported violation of federal law. *See Erickson v. Boston Sci. Corp.*, 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011) (explaining that "a plaintiff must allege that the defendant violated a particular federal specification referring to the device at issue . . . or identify specific PMA requirements that have been violated") (internal quotation marks omitted); *Weaver*, 2016 WL 7098781, at *6 ("A plaintiff cannot merely assert that the device violated federal standards but must provide some allegation regarding the nature of the alleged . . . defect as it relates to the FDA approval process.").

Applying these principles, courts in other MemoryGel Implant cases have dismissed manufacturing defect claims that, like the claims at issue here, are premised on vague and conclusory allegations concerning unspecified regulatory violations.  *See Ebrahimi III*, 2018 WL 6829122, at *2 (reaffirming that plaintiff's "resort to generalized FDA regulations governing the manufacture of the Implants (*e.g.*, the quality system requirements imposed by 21 C.F.R. section 820.20 *et seq.*) [falls] short of satisfying her pleading burden"); *Ebrahimi II*, 2018 WL 2448095, at *4 (reasoning that plaintiff's allegation that her implants suffered from "'poor quality of workmanship and patch defects' constitutes a factual conclusion that sheds little light on how the manufacturing of the implants failed to adhere to FDA specifications"); *Mize I*, 2018 WL 1364257, at *2 (rejecting plaintiff's allegations that Mentor "failed to adequately inspect, test, and validate the implants" and that her implants were manufactured with "nonconforming materials and uncertified components," reasoning that plaintiff did not "allege the respect(s) in which Mentor's inspection, testing and validation of the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

product or the product itself as implanted in Plaintiff violated FDA requirements")).

In addition, Plaintiffs do not allege *how* any violation caused their injuries. For example, Plaintiffs allege that in the mid-1990s, unidentified "quality standards for implant manufacturing were never met" (Compl. ¶ 61); "implants were sometimes contaminated with fleas" (*id.* ¶ 62); "some implants models had a high failure" (*id.* ¶ 63); and Mentor received a "Form 483" notification because "no finished device testing" had been performed (*id.*). But Plaintiffs do not allege any facts tying these alleged violations—from *decades* ago—to a manufacturing defect in the implants used in their procedures. *See generally* Compl. Instead, they simply conclude that causation exists without providing any supporting explanation. *See id.* ¶¶ 140, 224. That is insufficient. *See, e.g.*, *Warstler*, 238 F. Supp. 3d at 988 (finding that plaintiff "assert[ed] no facts linking an alleged . . . violation, recall, or FDA regulatory action to the injuries he claims that the specific device implanted in his body . . . caused").[9]

To the extent Plaintiffs' claims are based on alleged violations of the FDA's current good manufacturing practice ("cGMP") requirements in the Quality System Regulation, they fail for additional reasons. First, cGMP regulations are merely "'guidelines that do not create a federal requirement.'" *Laux*, 2017 WL 5186329, at *4 (quoting *Pearsall v. Medtronics, Inc.*, 147 F. Supp. 3d 188, 198 (E.D.N.Y. 2015)); *see also Simmons v. Boston Sci. Corp.*, 2013 WL 12130261, at *3 (C.D. Cal. Jan. 14, 2013) (explaining that cGMPs "are intended to serve only as an umbrella quality system," and "are simply too generic, standing alone, to serve as the basis for Plaintiffs' manufacturing-defect claims") (internal quotation marks omitted). Thus, claims based on cGMP violations "impose requirements 'different from or in addition to' those under

---

[9] *See also*, *De La Paz*, 159 F. Supp. 3d at 1094 (explaining that plaintiff "must allege that the irregularities documented in the 483s resulted in manufacturing defects that caused her injuries"); *Parker*, 584 F. Supp. 2d at 1301 (rejecting conclusory allegation that unspecified regulatory violations "proximately caused plaintiff's injuries" because it is "not sufficient to sustain plaintiff's burden of pleading under *Twombly*"); *see also Cline*, 17 F. Supp. 3d at 1283 (finding that "[p]laintiff lists a number of critical observations, but fails to allege how they are linked to her claims").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

federal law" and are therefore expressly preempted. *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d at 1158. Second, a claim premised on a cGMP violation is impliedly preempted under *Buckman* because it "hinges entirely" on conduct that allegedly violates federal law. *Ebrahimi I*, 2017 WL 4128976, at *6 (dismissing strict liability manufacturing defect claim premised on alleged cGMP violations as impliedly preempted under *Buckman*) (citing *Frere v. Medtronic Inc.*, 2016 WL 1533524, at *7 (C.D. Cal. Apr. 6, 2016) (same)); *see also Yosowitz v. Covidien*, 182 F. Supp. 3d 683, 697–98 (S.D. Tex. 2016) (holding that claim premised on failure to comply with cGMP design control requirements in section 820.30 was impliedly preempted).

## IV.   CONCLUSION

Based on the foregoing, Mentor respectfully requests that the Court grant this Motion and dismiss Plaintiffs' action in its entirety and with prejudice.

DATED:  June 12, 2019                    TUCKER ELLIS LLP


By: */s/Monee Takla Hanna*
    Dustin B. Rawlin
    Monee Takla Hanna
    Attorneys for Defendants

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of June, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing.


<u>/s/ *Monee Takla Hanna*</u>
Monee Takla Hanna