```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3         HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

 4   BRITTANY BILLETTS, AN            )
     INDIVIDUAL; VIVAN AGUIAR, AN     )
 5   INDIVIDUAL; ANN DELMONICO, AN    )
     INDIVIDUAL; CORNELIA DITTO, AN   )
 6   INDIVIDUAL; LEAH JOHNSON, AN     )
     INDIVIDUAL,                      )
 7                   PLAINTIFFS,      )
                                      )
 8            vs.                     ) No. CV 19-1026-AB-PLAx
     MENTOR WORLDWIDE, LLC; NUSIL,    )
 9   LLC; NUSIL TECHNOLOGY, LLC;      )
     AND DOES 1-100, INCLUSIVE,       )
10                   DEFENDANTS.      )
     _____)
11   MARY SEWELL AND TOM SAUNDERS,    )
     WIFE AND HUSBAND; CAROLE         )
12   LITTLE, AN INDIVIDUAL; JULIA     )
     MACEO, AN INDIVIDUAL; AURORA     )
13   VICTORIA CORONA CATTUZZO AND     )
     MICHAEL ANTHONY CATTUZZO, WIFE   )
14   AND HUSBAND; BARBARA JOHNCKE     )
     AND ANDERS JOHNCKE, WIFE AND     )
15   HUSBAND; MARIANNE CURRY AND      )
     JOSEPH ZACHARZUK JR., WIFE AND   )
16   HUSBAND; TRACIE LEACH AND        )
     GREGORY S. LEACH, WIFE AND       )
17   HUSBAND; VALERIE LENIE, AN       )
     INDIVIDUAL; DEBORAH MICHELLE     )
18   DESTASIO AND JOSEPH DESTASIO,    )
     WIFE AND HUSBAND; SCOMPLEY       )
19   HOLDEN AND MARK CLARK HOLDEN,    )
     WIFE AND HUSBAND; SHEILA         )
20   MATHIS AND RANDY MATHIS, WIFE    )
     AND HUSBAND; KRISTINA RUIZ AND   )
21   STEVE RUIZ, WIFE AND HUSBAND,    )
                     PLAINTIFFS,      )
22                                    )
              vs.                     ) No. CV 19-1126-AB-PLAx
23   MENTOR WORLDWIDE, LLC; NUSIL,    )
     LLC; NUSIL TECHNOLOGY, LLC;      )
24   AND DOES 1-100, INCLUSIVE,       )
                     DEFENDANTS.      )
25   _____)
```

1     REPORTER'S TRANSCRIPT OF PROCEEDINGS

2      FRIDAY, OCTOBER 25, 2019

3        9:19 A.M.

4      LOS ANGELES, CALIFORNIA

5   _____

6    **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
     FEDERAL OFFICIAL COURT REPORTER
7    350 WEST FIRST STREET, ROOM 4311
     LOS ANGELES, CALIFORNIA 90012
8      cmjui.csr@gmail.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFFS:

 3           FINSON LAW FIRM
             BY:  LOWELL W. FINSON, ATTORNEY AT LAW
 4           126 WESTWIND MALL
             MARINA DEL REY, CALIFORNIA 90292
 5           (602) 377-2903

 6
      FOR THE DEFENDANTS:
 7
             TUCKER ELLIS LLP
 8           BY:  DUSTIN B. RAWLIN, ATTORNEY AT LAW
             950 MAIN AVENUE, SUITE 1100
 9           CLEVELAND, OHIO 44113-7213
             (216) 696-4235
10

11    FOR THE DEFENDANTS:

12           TUCKER ELLIS LLP
             BY:  MONEE TAKLA HANNA, ATTORNEY AT LAW
13           515 SOUTH FLOWER STREET, 42ND FLOOR
             LOS ANGELES, CALIFORNIA 9001-2223
14           (213) 430-3378

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, OCTOBER 25, 2019

 2                          9:19 A.M.

 3                            -  -  -

 4              THE CLERK:  Calling Civil Case 19-1026, Brittany

 5    Billetts, et al., versus Mentor Worldwide, LLC, et al., and

 6    Case 19-1126, Mary Sewell, et al., versus Mentor Worldwide,

 7    LLC, et al.

 8              Counsel, please state your appearances.

 9              MR. FINSON:  Lowell Finson for both plaintiffs.

10              THE COURT:  Good morning.

11              MR. FINSON:  Good morning, Your Honor.

12              MR. RAWLIN:  Good morning, Your Honor.  Dustin

13    Rawlin from Tucker Ellis for the defendant,

14    Mentor Worldwide, LLC.

15              THE COURT:  Good morning.

16              MS. HANNA:  Good morning, Your Honor.  Monee Hanna

17    for Defendant Mentor Worldwide, LLC.

18              THE COURT:  Good morning.  All right.  So I've

19    issued tentatives on both the cases.  Have the parties had

20    adequate time to review the tentatives?

21              Mr. Finson?

22              MR. FINSON:  Yes, Your Honor.

23              THE COURT:  Mr. Rawlin and Ms. Hanna?

24              MR. RAWLIN:  Yes, Your Honor.

25              THE COURT:  So, Mr. Finson, why don't you step to
```

 1    the lectern so we can have a little conversation, please.

 2              MR. FINSON:  Thank you, Your Honor.

 3              THE COURT:  And, obviously, I want to give you any

 4    opportunity to be heard if -- any points that you want to

 5    raise, but maybe I'm missing something here.

 6              At least from what I understand in your papers,

 7    you're saying that the Court didn't explain its rationale

 8    for its decision, and you cite what I will call Vieira 1,

 9    the opinion Vieira 1.  But I thought there was a Vieira 2

10    where there was, at least in the Court's mind, a difference

11    as far as information.

12              But I don't think you refer to Vieira 2 in the

13    papers.  And so I guess we've issued a tentative now that I

14    think outlines the differences between those two opinions

15    and that in Vieira 2 there was the additional evidence of

16    the deposition testimony as well as the amended statement or

17    at least the statement to correct the earlier filing.

18              And yeah.  So with that in mind, tell me what's

19    still, in your mind, the error that the Court has committed?

20              MR. FINSON:  First of all, as to the affidavit

21    versus the deposition, that's the distinction between 1 and

22    2.

23              THE COURT:  Right.

24              MR. FINSON:  Yes.  And reading of the

25    deposition -- I took the deposition.  So I was there.  What

1    happened was was Mr. Mraz confirmed those things that he

2    stated in the affidavit.

3         He offered absolutely nothing in the deposition

4    indicating there was more information, but he says it was an

5    oops.

6         And we decided that in 2013, when we -- when he

7    signed the document, that four years later after the case

8    was filed they all of a sudden realized that they maybe made

9    a mistake, and they said, oops, and we amend the document

10   after the case is filed.

11        The reason that's important is that the issue of

12   Mr. Mraz's credibility is what indicated to us that there

13   was really nothing new so that there was -- it was not

14   another paper.  It was a confirmation of only what he said

15   in his affidavit.

16        THE COURT:  But did you present any facts to

17   counter this evidence?

18        MR. RAWLIN:  The only facts we had was my

19   cross-examination of him asking him why it was that all of a

20   sudden he decided that they should change the name and the

21   nature of this corporation, and his answer was, well, it was

22   a clerical error.

23        Your Honor, it's almost like saying I robbed the

24   bank, but I was in the wrong -- it was not the right bank.

25        The information that he gave us was they made a

```
1   mistake, and it was a factual issue to me.  In other words,
2   I could present it to the Court, I could present it to the
3   jury, I guess, and say do you believe this man when he says
4   it's a clerical error versus the fact that it only took this
5   litigation and him -- and them finding themselves in the
6   position of being in state court versus federal court.
7         And the other thing about this is this:  That I
8   asked the defendants -- I said, look.  When you come to the
9   deposition, bring something that shows me that this is, in
10  fact, correct.
11        They brought nothing except the amended statement.
12  I asked --
13        THE COURT:  Did you provide any evidence -- or is
14  there any evidence that you're aware of that suggests that
15  NuSil was involved in the manufacture or sale of these
16  breast implants?
17        MR. FINSON:  No, I didn't get it at the
18  deposition.  We haven't had discovery to ferret that out.
19        So the -- and the other thing is is that I didn't
20  have the federal tax returns indicating that, for all the
21  years they claim to be a manufacturer and corporation that
22  in fact they made a mistake.
23        The other thing, Judge, is, just because they
24  claim not to have had any part in the manufacturing or sale
25  of this doesn't mean they didn't exercise control over the
```

1    other corporations.  That was something else that we would

2    be able to ferret out in discovery.

3         So the problem with presenting evidence at this

4    stage is we have no opportunity to gather the evidence, no

5    opportunity -- the only thing we could do is get the guy at

6    deposition and he said, Yeah, we made a mistake.  That's all

7    I got.  That's all I could do.

8         So at this point, they -- I believe, and it's just

9    my, I guess, unsupported belief -- yeah, but their -- the

10   burden shifted to them to bring something to indicate that I

11   was wrong in cross-examining the gentleman on the issue of

12   his credibility.

13        THE COURT:  Why do you believe that the burden has

14   shifted?  What's the authority to say that the burden's now

15   shifted?  Isn't it up to you to establish jurisdiction?  Or

16   I guess aren't we -- the Court has to determine if there's

17   jurisdiction.

18        MR. FINSON:  Yes, Your Honor, but our

19   understanding of the burden of proof is that the four

20   corners of the Complaint indicate the issues of remand.  And

21   that's the reason why the burden should shift to the other

22   side if they want to say, unh-unh, you know, we're not a

23   corporation.

24        The corporation -- the issue of whether or not

25   they were a California corporation -- my understanding of

```
 1    the law is is you look at the Complaint, and that's what you

 2    got.

 3              And we indicated in Complaint, oh, look.  They

 4    said they were a California corporation.  They said they

 5    manufactured silicone.  So why shouldn't it now be their

 6    burden to come forward and say, we didn't?  And just because

 7    they --

 8              THE COURT:  I think Mr. Rawlin or Ms. Hanna would

 9    say, We did.  There's a deposition.  There's a corrected

10    statement that shows we didn't manufacture it.  And I

11    think -- I mean, Mentor has maintained -- or, actually,

12    NuSil has maintained, We're a holding company.  We have

13    nothing to do with the manufacture or sale of these

14    implants.

15              MR. FINSON:  Yes.  And they did after we filed the

16    first Complaint.  And we had no -- Judge, we had no

17    opportunity to delve into those things other than the

18    deposition itself.

19              They say, Well, we brought Mr. Mraz to confirm

20    everything he said in his deposition.  They brought -- I

21    challenge them to say what new thing they brought in that

22    deposition that indicates that what we had to begin with was

23    not a remandable issue on the four corners of the Complaint

24    and the issue of his credibility.

25              Could I just say something, Judge?  One thing.
```

1    The reason -- excuse me.  I started new medication, and I

2    need water, if that's okay.

3           The reason we're here is because as we

4    presented -- excuse me.  We presented Judge Buckley's,

5    according to the defendant, no void advisory opinion.  And

6    the reason that we presented that was simply to show the

7    Court that the only reason this case is at this point over

8    is because we were in this court versus being in the state

9    court.

10          And issues of preemption are matters of state law

11   to be determined by state courts -- of course, you can

12   determine those things, Judge.  But the thing to look at is

13   what do the state courts say with regard to preemption?

14          And here Judge Buckley said that he would -- that

15   there's no preemption.  He says that, in his mind, it's --

16   you know, let's move on, let's get to the jury.

17          And in that instance, the reason it's so important

18   is because it's almost like a "Wizard of Oz" where you have

19   the curtain up there and all of a sudden we pull back the

20   curtain and there it is.  This is Judge Buckley's decision,

21   and it changes everything insofar as this case is concerned.

22          THE COURT:  Okay.  All right.  Interesting

23   analogy.  I shudder to think who I might be in this

24   "Wizard of Oz" analogy but --

25          MR. FINSON:  You're the judge, Judge.  And out of

1  respect, of course, I shouldn't have said "Wizard of Oz."  I

2  should have said Judge Birotte.

3          THE COURT:  I'm joking.  I just didn't want to be

4  the Tin Man.  That's all.

5          MR. FINSON:  Right.  Okay.

6          THE COURT:  Other question I have -- you state in

7  the motion -- you talk at length about there's a change of

8  material fact and not law.  What are the new facts?  I mean,

9  I think the facts are what they are; correct?

10          MR. FINSON:  No.  The new facts are what

11  Judge Buckley did as the head of the department in

12  Los Angeles saying -- the new fact was saying, if it was in

13  front of him, we wouldn't be in front of you.  And that's

14  the new fact we brought to your attention, Judge.

15          THE COURT:  All right.  That's an interesting

16  theory.  All right.  And then you also rely on the Kline

17  case.

18          Again, maybe I misread this, but I thought the

19  judge in the Kline case, in essence, had the same analysis

20  that I had.  He said that -- I was trying to pull it.  I

21  couldn't find it this morning, but I thought there -- he

22  makes a reference directly to this Court and says, But I now

23  have this new information; so I am not going to adopt what

24  he did in Vieira 1.

25          So it sounds like Judge Kline was doing the exact

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    same thing that I did in Vieira 2 and potentially in these

 2    cases.

 3              MR. FINSON:  Except for one thing.  He sent it

 4    back for remand to the state court to make the decisions,

 5    and we're in the state court right now making and arguing

 6    the same things that the defendants wanted to argue with

 7    regard to severance and other things like that.

 8              So we are in the state court in Sacramento and

 9    judge -- and our judge there -- how do I say this? -- he did

10    what I wanted him to do, you know, and he remanded and let

11    the state court --

12              THE COURT:  But he didn't remand it on the

13    fraudulent joinder issue, did he?

14              MR. FINSON:  Well, as far as the -- no, he didn't.

15    But what -- the point is is that, when he makes a -- has a

16    discussion of fraudulent joinder, he could have at that

17    point done the very same thing that you had did -- you did.

18    It was his discretion to do that.  He chose not to.  He sent

19    it back to state court to make the decisions.

20              And, in essence, when it went back to state court,

21    what we would have been arguing is is that let's do some

22    discovery to ferret out other things regarding the

23    allegation of fraudulent joinder.  And there would have been

24    nothing stopping us, and there's nothing stopping us now to

25    make those arguments again.
```

```
 1            THE COURT:  All right.

 2            Let me hear -- who's drawn the short straw for

 3   Mentor Worldwide.  Mr. Rawlin?  Okay.

 4            MR. RAWLIN:  Yes, Your Honor.  May it please the

 5   Court.  Your Honor, there's some to unpack there, I think,

 6   to clarify.

 7            First of all, I think Your Honor has correctly in

 8   the tentative elucidated the difference between Vieira 1 and

 9   Vieira 2.  It's not, as the plaintiff says, the exact same

10   facts.

11            The parties jointly moved Judge Gutierrez at the

12   time who had the case for leave to conduct the 30(b)(6)

13   deposition of NuSil, LLC, to get to the bottom of whether

14   they were a proper defendant or not.  And Mr. Finson showed

15   up and deposed Mr. Mraz as the 30(b)(6) representative and

16   conclusively established that they do not make silicone

17   products or breast implants.

18            So I'm not sure -- like you, I'm a little confused

19   as to why we're still talking about this.  He resolved the

20   fact issue from Vieira 1 that Your Honor had a concern

21   about.  That's the whole reason the parties agreed to take

22   the deposition, to resolve that fact issue.

23            And the plaintiff has not presented, despite

24   having the ability to depose Mr. Mraz -- and Mr. Finson

25   might be misremembering, but there was no document request
```

1   to NuSil, LLC.  There was no bring your tax returns.  He had

2   a full opportunity to depose Mr. Mraz and ask many

3   questions, and he did ask him questions about does NuSil,

4   LLC, control NuSil Technology?

5         Now, let's back up.  And remember, the plaintiffs

6   actually have the NuSil entity that makes silicone products

7   and the silicone for breast implants in the case.  It's

8   NuSil Technology.  So this isn't some what -- who is this

9   sham party?  We have the right party.

10        The only thing that's going on is the plaintiffs

11  want to include this additional California party to stay in

12  state court.  That's the only thing that's going on here.

13        Mr. Finson said that preemption is a matter of

14  state law.  It's not.  It's a matter of federal law.  That's

15  why preemption's mostly determined correctly in federal

16  court because it's an application of federal law and that it

17  preempts state law because of the Supremacy Clause.

18        I will remind this Court also that Judge Buckley

19  does not have either of these cases today.  These cases were

20  not before him.  That conditional advisory opinion which he

21  did not have jurisdiction and admitted he did not have

22  jurisdiction when he wrote it -- it has no legal force and

23  effect.

24        And that was in the Vieira case, not in either of

25  these cases.  These cases, I believe, are in Orange County

1    and San Bernardino County.  So I don't think these -- these

2    cases aren't even going back to Judge Buckley.

3              Judge, the Kline decisions, we attached it at

4    Document 21-1.  And you're absolutely correct.  The judge

5    there, he remanded an entirely different issue because in

6    that case there was a Pennsylvania nondiverse plaintiff and

7    NuSil Technology, LLC, is a Pennsylvania corporation.

8              We had asked him to exercise discretion to sever

9    out the Pennsylvania plaintiff, and he said, "You know what?

10   I'm not going to do that.  I'm not going to exercise my

11   discretion.  I'm going to send" --

12             THE COURT:  They're a little overworked up there.

13             MR. RAWLIN:  And we totally understand that.  But

14   what importantly he did do was, on the same evidence record

15   that this Court had in Vieira 2, said, "Looking at the

16   deposition, yes, NuSil, LLC, is fraudulently joined.  No

17   question about that.  I'm going to remand it on a different

18   issue and send it back."

19             Your Honor, that's all I have.  I believe your

20   tentative correctly characterizes the law and the arguments.

21             Thank you.

22             THE COURT:  I had one quick question.

23             MR. RAWLIN:  Sure.

24             THE COURT:  Let me just -- I'm just curious as to

25   your response.  I think Mr. Finson sort of said -- I think

1    you covered it, but I just want to make sure, this notion of

2    burden shifting, that it's your burden to prove.

3              MR. RAWLIN:   I mean, I think in terms of -- I

4    mean, the plaintiff can't just make up stuff in a Complaint

5    and then say, "Well, we're good."

6              The reason that there was evidence presented in

7    both removals and post-removals in Vieira and other cases

8    that indicated that NuSil, LLC, was fraudulently joined

9    satisfies our burden.

10             We have -- that's why we went and took the

11   deposition, and that's why plaintiff agreed to take the

12   deposition.   I mean, let's remember, the parties jointly

13   moved this Court to conduct early discovery of NuSil, LLC,

14   to get to the bottom of whether they were a proper

15   defendant.

16             And Mr. Finson had the opportunity to ask all

17   those questions, which he did.   I mean, that deposition

18   transcript is in the record.   It's 40 pages.   He asked

19   Mr. Mraz all sorts of questions trying to get at, "Well,

20   don't you have something to do with manufacturing breast

21   implants?" and the answer was a resounding no.

22             We have carried that burden, if there is any

23   burden on us.   I believe the burden's on the plaintiff to

24   come forward with some evidence that they are actually a

25   manufacturer that can be -- that they can have a claim

1   against.  And I think, as this Court's correctly ruled,

2   there's no possibility they can pursue NuSil, LLC, in this

3   type of case, a product liability case.

4          THE COURT:  All right.  Thank you, Mr. Rawlin.

5          Ms. Hanna, you don't want to join in on the party

6   today?

7          MS. HANNA:  I think he covered it fine.

8          THE COURT:  All right.

9          Mr. Finson, let me give you a few moments to

10  respond.

11         MR. FINSON:  First of all, we have the right

12  party.  Yes, we do.  We don't have a case anymore and

13  that -- Mr. Rawlin didn't talk about that.

14         I mean, we have the right party now, but he's very

15  satisfied that we don't have a case.  And that's the big

16  distinction between what's happening now and what Mr. Rawlin

17  thinks is somehow or other our -- why do we want to be in

18  state court?  Well, it's simple.  Because in state court we

19  would win, in my opinion, and that's just because of what --

20         THE COURT:  Why?

21         MR. FINSON:  Because that's what Judge Buckley

22  said.  That's what I have.  And we have a --

23         THE COURT:  So you want to get back to state court

24  because of a preview of commentary the judge said in state

25  court?  Is that it?

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1            MR. FINSON:  That's it, Judge.  When it comes down
 2   to whether or not we have a litigation and whether or not
 3   this entire matter is eviscerated because of what's
 4   happening here, yes.  That's why I want to go back to state
 5   court.  Absolutely.
 6            And you know, one other thing real quick.  What
 7   Mr. Rawlin said was we can't make up evidence and then say
 8   it's right.  We didn't make up the fact that these guys
 9   presented a signed document that they swore to be true that
10   they were, in fact, a manufacturer of silicone products.
11            We didn't make that up.  We attached that and
12   showed it in our Complaint, and we attached it in the
13   motions before the Court.  Wasn't made up.  What was made up
14   in my mind was why they changed their mind.
15            THE COURT:  But do you disagree that the
16   deposition -- the whole purpose of the deposition was to
17   address this issue?
18            MR. FINSON:  Yes.  And we asked -- Mr. Rawlin -- I
19   might be not -- I don't think I misremembered.  We asked him
20   to bring documents that support his position, and he didn't.
21   So it --
22            THE COURT:  But my point is the purposes of that
23   deposition was to give you an opportunity to probe,
24   critically examine, or ascertain what NuSil's relationship
25   was with these implants; right?
```

| 1 | MR. FINSON:  Yeah.  And I asked Mr. Mraz in the |

1       MR. FINSON:  Yeah.  And I asked Mr. Mraz in the

2  deposition did he sign the document that he presented to the

3  State of California indicating they were a manufacturer.

4       He said, "Yes, I did."

5       I said, "Did you read it?"

6       He said, "Yes, I did read it.

7       "And was it true then?"

8       Well, apparently, it was not true then, but he

9  signed it anyway.  So what do we present?  We presented a

10  classic case of a real credibility gap as far as this

11  gentleman was concerned.

12       THE COURT:  Okay.  All right.  Thank you,

13  Mr. Finson.

14       MR. FINSON:  Thank you, Your Honor.

15       THE COURT:  All right.  So I'm going to take this

16  matter under submission.  I'll think about it over the

17  weekend.  So it's not likely that the Court will issue a

18  final ruling on this case until Monday or Tuesday of next

19  week, but the matter will remain under submission until the

20  Court issues its final ruling.

21       Thank you for coming in.  Have a good weekend.

22  All right?

23       MR. FINSON:  Thank you, Your Honor.

24       MS. HANNA:  Thank you, Your Honor.

25       THE CLERK:  All rise.  This Court is in recess.

1          (Proceedings concluded at 9:38 A.M.)

2                              --oOo--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  February 10, 2020.




                    _/S/ CHIA MEI JUI_____

                    Chia Mei Jui, CSR No. 3287